**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **TiVo Inc.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Civil Action No. 2:12-cv-00311-JRG** |
| **v.** ) | |
| ) | **DEMAND FOR JURY TRIAL** |
| ) | |
| **CISCO SYSTEMS, INC., TIME** ) | |
| **WARNER CABLE INC., and TIME** ) | |
| **WARNER CABLE LLC,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |
| ————————————————— ) | |

**DEFENDANT CISCO SYSTEMS, INC.'S MOTION FOR LEAVE
TO FILE AMENDED ANSWER AND COUNTERCLAIMS
AND REQUEST FOR EXPEDITED BRIEFING**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................ 3

    A.    Cisco's DVR Patents and TiVo's Infringing Services and Systems...................... 3

    B.    Status of the Present Litigation ............................................................. 8

III.   ARGUMENT ................................................................................................ 8

    A.    Good Cause Exists for Granting Cisco's Motion for Leave .................................. 9

        1.    Cisco's Motion Is Not Unreasonably Timed ............................................. 9

        2.    Cisco's Counterclaims Serve the Important Interest of Cisco's Enforcement of its Patent Rights and Overlap Substantially With Issues Already in this Case ..................................................... 11

        3.    TiVo Would Not Suffer Undue Prejudice in Being Asked To Answer for Its Own Infringement .............................................. 13

        4.    Cisco's Counterclaims Can Be Handled With Minor Modifications to the Existing Scheduling Order .............................................. 14

    B.    Justice Would Be Served by Granting Cisco's Motion for Leave ........................ 14

IV.   REQUEST FOR EXPEDITED BRIEFING .................................................... 15

V.    CONCLUSION: RELIEF REQUESTED........................................................ 15

## TABLE OF AUTHORITIES

**Cases**

*Foman v. Davis*,
  371 U.S. 178 (1962) ............................................................................................... 9, 15

*Garmin Ltd., v. TomTom, Inc.*,
  2007 U.S. Dist. LEXIS 74032 (E.D. Tex. Oct. 3, 2007) (Davis, J.). ........................................ 14

*Microsoft Corp. v. TiVo, Inc.*,
  CA No. 5:10-cv-240, 2011 U.S. Dist. LEXIS 17756 (N.D. Cal. Feb. 14, 2011) ...................... 2

*S&W Enters. v. Southtrust Bank of Ala.*,
  315 F.3d 533 (5th Cir. 2003) ...................................................................................... 9

*Stripling v. Jordan Prod. Co.*,
  234 F.3d 863 (5th Cir. 2000) .................................................................................... 15

*Whitmire v. Victus Ltd.*,
  212 F.3d 885 (5th Cir. 2000) .................................................................................... 15

**Rules**

Fed. R. Civ. P. 15(a) ............................................................................................... 9, 14

Fed. R. Civ. P. 15(a)(1) ............................................................................................ 9

## I.    INTRODUCTION

Defendant Cisco Systems, Inc. ("Cisco") respectfully moves for leave to file its First Amended Answer, Affirmative Defenses and Counterclaims, filed concurrently herewith ("Amended Cisco Pleading").  Because good cause exists for this request, and because the interests of justice would be served by allowing the amendment, Cisco's motion should be granted.

In particular, Cisco respectfully seeks leave to amend its pleadings to, *inter alia*,[1] add counterclaims of patent infringement that are integrally tied to the claims and defenses already in the case.  Cisco's amended counterclaims are for infringement by Plaintiff TiVo, Inc. ("TiVo") of three Cisco patents that pertain to DVR technology, which is the core technology already at issue in this case.  The Cisco patents to be added in the Amended Cisco Pleading are U.S. Patent No. 7,505,592, which involves multi-room television technology ("the '592 patent"); U.S. Patent No. 7,409,140, which involves multi-tuner DVRs ("the '140 patent"); and U.S. Patent No. 7,512,315, which involves DVR time-shift buffering ("the '315 patent") (collectively, the "Cisco DVR Patents'"; *see* Exs. A-C to Amended Cisco Pleading).

The relevant factors for both "good cause" and the "interest of justice" support the Court's granting leave to amend.

*First*, Cisco has not unduly delayed in seeking to add its infringement counterclaims.  Cisco undertook a thorough pre-filing investigation to determine the sufficiency of a counterclaim for infringement of the Cisco DVR Patents before seeking to amend its

---

[1] The Amended Cisco Pleading includes amendments that do not seek to add patents to the case. *See* Amended Cisco Pleading at ¶¶ 61-84.  Per the Court's Docket Control Order (Dkt. No. 67), Cisco need not seek leave of court for such amendments if made by May 15, 2013.  Cisco's motion addresses only the matters for which leave is required.  If this Court were to deny Cisco's motion after the May 15th deadline for amendments, Cisco respectfully requests two business days to re-file its amended pleading to include the portions for which leave is not required.

counterclaims.   Notably, Cisco is moving for leave to amend earlier and more promptly than TiVo asserted was reasonable for its addition of a patent into a litigation that was pending against Microsoft.[2]   Additionally, many of the TiVo products that Cisco is accusing were not available for sale until months after TiVo's complaint and Cisco's answer in this case were filed.   For example, the TiVo Premiere 4 DVR was released on August 16, 2012,[3] the TiVo Stream went on sale September 6, 2012,[4] and the TiVo Mini first became available in retail outlets in March 2013.[5]   Cisco's infringement claims are meritorious and will be adjudicated efficiently by including them in the present case.

*Second*, Cisco's amended counterclaim would not unduly prejudice TiVo or require a continuance.   Litigating seven patents instead of four—all pertaining to the same area of technology (DVR technology)—will not unduly prejudice TiVo, but will instead result in substantial gains in efficiency.   This suit is still in the early stages of discovery, which is far from complete.   The parties have not noticed or conducted any depositions.   No significant dates in the existing Docket Control Order—including the claim construction hearing date of July 31, 2013—need to be rescheduled to accommodate Cisco's proposed amendments.   In addition,

---

[2] *See Microsoft Corp. v. TiVo, Inc.*, CA No. 5:10-cv-240, 2011 U.S. Dist. LEXIS 17756 (N.D. Cal. Feb. 14, 2011) (granting TiVo's motion for leave to amend filed a year into the litigation, and one month prior to the deadline for claim construction briefs); *see* TiVo's motion at Dkt. No. 61 (filed Jan. 13, 2011) (asserting that TiVo "acted responsibly and promptly and brought [its] request in a timely manner") (Mehra Decl, Ex. E).

[3]  http://www.engadget.com/2012/08/16/tivo-premiere-4-quad-tuner-500gb-249/   (Ex.   A   to Declaration of Arjun Mehra, attached hereto as Exhibit 2 (hereafter "Mehra Decl.")).

[4] http://www.engadget.com/2012/08/29/tivo-stream-transcoder/.  (Mehra Decl., Ex. B).

[5]  http://www.zatznotfunny.com/2013-03/tivo-mini-review/ (Mehra Decl., Ex. C).   The TiVo Mini   was   available   through   at   least   one   non-retail   outlet   on   February 7, 2013. http://www.engadget.com/2013/02/07/tivo-mini-available-suddenlink-price/ (Mehra Decl., Ex. D).

Cisco agrees to serve its infringement contentions concerning the Cisco DVR Patents within one week of the Court's ruling on this motion in order to eliminate any potential for inconvenience on TiVo.  Allowing Cisco's amended counterclaims to proceed against TiVo in this case will save the resources that would be expended if the Court had to educate two different juries, in two different proceedings, about the parties, the patents and the relevant technology.

*Third*, TiVo has no basis for asserting that Cisco's motion for leave is in bad faith or made with dilatory motive, or seeks to add claims that would be merely futile.  Rather, Cisco seeks redress for legitimate claims of patent infringement.   Cisco's counterclaims are meritorious, and the parties should be given the opportunity to litigate their substance.

For all of these reasons, Cisco respectfully requests that the Court grant its motion for leave to amend.  In addition, to minimize any potential claims of prejudice by TiVo regarding timing, Cisco requests that briefing on its motion be expedited.

## II.   BACKGROUND

### A.   Cisco's DVR Patents and TiVo's Infringing Services and Systems

This case was initiated by TiVo, who has alleged patent infringement against defendants Cisco Systems, Inc., Time Warner Cable Inc., and Time Warner Cable LLC, under four TiVo patents pertaining to DVR technology—U.S. Patent Nos. 6,233,389, 7,529,465, 7,493,015, and 6,792,195 (collectively, "TiVo Patents-in-Suit").  TiVo itself also sells DVRs and DVR-related peripherals (including the TiVo Mini box[6] and the TiVo Stream box[7]) and provides DVR services under its TiVo brand name.[8]

---

[6] *See, e.g.,* http://www.tivo.com/products/tivo-mini/index.html (Mehra Decl., Ex. F).

[7] *See, e.g.*, http://www.tivo.com/products/tivo-stream/index.html (Mehra Decl., Ex. G).

[8] *See, e.g.*, http://www.tivo.com/products/tivo-walkthrough/index.html (Mehra Decl., Ex. H).

One issue that TiVo has injected into this litigation—and that would be challenged squarely by Cisco's counterclaims—is TiVo's touting itself as virtually the inventor of the DVR. Contrary to TiVo's suggestion, TiVo did not invent the idea of the DVR, and many companies have contributed to the development of modern DVR products and services, including the prior artists identified by Cisco in its invalidity contentions, which were served on October 24, 2012. Cisco itself (including Scientific-Atlanta, which Cisco acquired in 2005) is a worldwide leader in DVR and set-top box innovations.  Cisco has determined that TiVo infringes at least three of Cisco's patents pertaining to DVR technology, including Cisco's pioneering work on multi-room television technology, as well as its fundamental contributions on multi-tuner DVRs and time-shift buffering.  Cisco is therefore seeking leave to amend its counterclaims to add infringement allegations under those patents, so that both parties' patent claims pertaining to alleged infringing DVR technology—and the controversy over the true inventorship of the multi-room, multi-tuner, and time-shift buffering technologies for modern DVRs —may be resolved efficiently in this forum.

The Cisco DVR Patents that form the basis for the Amended Cisco Pleading are the '592, '140 and '315 patents, all of which are infringed by TiVo's DVR products, peripherals and/or services. Cisco's '592 patent pertains to its multi-room television



4

technology service and equipment.   [*See* Ex. A to Amended Cisco Pleading] In particular, Cisco's '592 patent describes and claims methods for transmitting service (such as digital television service) to multiple subscriber locations within a subscriber's network.  For example, as illustrated in FIG. 1 of the '592 patent, digital television service may be delivered to a subscriber's digital subscriber communications terminal (DSCT) and to multiple locations authorized for that subscriber, such as the subscriber's television and the subscriber's computer. [*See id.* at FIG. 1 and, *e.g.*, *id.* at 3:1-20]

Various TiVo DVRs, including, e.g., its Premiere 4 DVR, and its "TiVo Mini" and "TiVo Stream" peripheral boxes infringe the '592 patent by enabling the transfer of digital television programming from a subscriber's DSCT (*e.g.*, the TiVo Premiere DVR) to another device authorized for that subscriber, such as another DVR or a mobile device.[9]

## Transferring shows

With your TiVo Premiere, you can take your shows with you. Easily transfer shows to another TiVo Premiere or other TiVo box on your home network, to your PC or Mac, even to your favorite portable device.



The TiVo Mini conveniently allows you to enjoy all the entertainment from your TiVo Premiere 4 or Premiere XL4/Elite DVR in another room through your home network (Ethernet or MoCA setup only. Wireless setup not supported).

○ Watch live TV and recorded shows from your 4-tuner TiVo DVR

○ Access movies and music from Hulu Plus, YouTube™, Pandora®, Spotify and more*

○ Schedule recordings, WishList® searches and Season Pass® recordings

---

[9] Cisco's analysis at this point is based on publicly available information believed to be reliable, including TiVo's website.  [*See, e.g.*, TiVo Premier Viewer's Guide at 54 (Mehra Decl., Ex. I); *see also* http://www.tivo.com/products/tivo-mini/index.html (Mehra Decl., Ex. F); http://www.tivo.com/products/tivo-stream/index.html (Mehra Decl., Ex. G)]



TiVo Stream adds flexibility to your TiVo experience by letting you stream shows to mobile devices in your home, or wirelessly transfer shows and take them to go.*

- Stream your recorded shows from your TiVo Premiere series DVR simultaneously to multiple mobile devices
- Watch a show on a mobile device as it's being recorded
- Wirelessly transfer shows to mobile devices
- Transfer a one-hour show in as little as 15 minutes

Cisco's amended counterclaims also allege infringement by TiVo of Cisco's '140 patent, which describes and claims methods and systems that enable DVRs with multiple tuners to resolve conflicts when receiving media content (such as digital television service) over multiple channels at the same time—for example, when a user is watching one television channel while recording a show on another channel.  [*See* Ex. B to Amended Cisco Pleading]  The '140 patent in particular teaches and claims how to resolve conflicts when the number of available tuners is insufficient to cover all of the user's choices, in which case the lowest priority tuner is identified and discontinued.  [*See id.* at, *e.g.*, Claim 1]  Various TiVo DVRs, including, e.g., TiVo's Premiere 4 DVR and the TiVo Mini infringe the '140 patent by allowing the user to adjust the priority of programming choices so that, if the number of tuners is insufficient to cover all of the user's choices, the lowest priority programming is discontinued:[10]

---

[10]  *See, e.g.,* TiVo Premier Viewer's Guide at 32 (Mehra Decl., Ex. I).

> ### Recording with Overlap Protection™
>
> Being able to record two programs at the same time doesn't eliminate all possible recording conflicts. The Overlap Protection feature gives you additional options for dealing with recording conflicts when they occur.
>
> If Overlap Protection is turned off, when two shows on the same tuner overlap by a few minutes (for example, one program ends at 8:33, while the next program begins at 8:30), the lower priority recording is cancelled. But with Overlap Protection turned on, the TiVo Premiere simply clips the lower priority recording by just enough minutes to allow both programs to record.
>
> Overlap Protection works by determining the priority of each program scheduled to record. For repeating recordings, it uses the Season Pass manager to learn which programs have higher or lower priorities (see page 31). One-time recordings are not listed on the Season Pass manager; these individual recordings that you schedule receive the highest priority. The most recent individual recording that you requested always has the highest priority. (TiVo Suggestions always have the lowest priority.)
>
> When scheduling new recordings, the TiVo Premiere notifies you of any recording conflict and gives you options for resolving it. If Overlap Protection is on, your options include clipping the lower priority program.

Cisco also seeks leave to amend to add its '315 patent, which involves managing buffers used in program time shifting—such as when using "trick mode" operations (*e.g.*, fast-forward, rewind, etc.) on a "live" television show.  [*See* Ex. C to Amended Cisco Pleading, at, *e.g.*, 3:4-33]  In particular, the '315 patent teaches providing or preventing access to the buffered video of a displayed television channel based on user input after changing the channel.  [*See id.* at, *e.g.*, Claim 14]   Various TiVo DVRs, including, *e.g.*, TiVo's Premiere 4 DVR, infringe the '315 patent by recording two different TV channels and allowing a user to watch both by swapping between them, without missing portions of the programs while swapping.[11]

---

[11] *See, e.g.,* TiVo Premiere Viewer's Guide at 10 (Mehra Decl., Ex. I).

**Watching and recording two shows at once**

Your TiVo® Premiere can record two different live TV channels at the same time — one on each of its two tuners. Go ahead, try it:

1. First, press PAUSE ⏸ to pause the live TV show you're watching.

2. Press LIVE TV/SWAP 🔘 to swap to the other tuner.

3. Watch the show for a few moments, then press LIVE TV/SWAP 🔘 again to swap back to the first tuner. Notice that the first show you were watching is still paused. Press PLAY (or PAUSE again) to continue watching the show.

### B.      Status of the Present Litigation

Although this case was filed last June, it is still in its relatively early stages.  *See* Amended Docket Control Order, Dkt. No. 67.  The parties have not yet exchanged terms for claim construction, and the *Markman* hearing is not until July 31, 2013.  *Id.*  Trial is not scheduled for nearly a year (March 2014).  *Id.*

Ample time remains for discovery on Cisco's counterclaims—the close of fact discovery is over six months away (October 28, 2013).  *Id.*  Meanwhile, discovery is underway, but far from complete.  Both parties have produced documents, but production continues.  In that regard, Cisco notes a substantial overlap between documents already produced by TiVo regarding TiVo's own DVR products and services and documents that Cisco would need to prove its infringement counterclaims by those same TiVo products and services.  Each party has served at least one set of interrogatories, but neither has exhausted the limit on the number of interrogatories that may be propounded.  No depositions have been noticed or scheduled yet.

## III.    ARGUMENT

Cisco's motion is supported by good cause as well as the interests of justice.  In determining whether "good cause" exists, this Court considers four factors:  (1) the explanation for the failure to meet the deadline; (2) the importance of the thing that would be excluded; (3) potential prejudice in allowing the thing that would be excluded; and (4) the availability of a

continuance to cure such prejudice.  *See S&W Enters. v. Southtrust Bank of Ala.,* 315 F.3d 533, 536 (5th Cir. 2003).  Here, each of these factors supports Cisco's motion.  In addition Federal Rule of Civil Procedure 15 provides that "leave shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  The types of reasons that might justify denial of permission to amend a pleading include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, [and] undue prejudice to the opposing party."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  TiVo cannot show the presence of any of these reasons in this case, and hence Cisco's motion for leave should be granted.

### A.    Good Cause Exists for Granting Cisco's Motion for Leave

### 1.    Cisco's Motion Is Not Unreasonably Timed

Turning first to the "good cause" standard, the first of the four factors considered by this Court is the explanation for the failure to meet the deadline.  *S&W Enters.,* 315 F.3d at 536. Cisco submits that its motion should not be considered unreasonably timed.  The Court's Docket Control Order does not provide a deadline for amending pleadings to add patents;[12] therefore, the usual timing of Federal Rule of Civil Procedure 15 controls.  Rule 15 allows amendments without leave of court only within "21 days after service of a responsive pleading."  Fed. R. Civ. P. 15(a)(1).  Many of the accused TiVo products, however, were not available for sale until months after TiVo's complaint and Cisco's original answer in this case were filed.  For example, the TiVo Premiere 4 DVR was released on August 16, 2012,[13] the TiVo Stream went on sale

---

[12] Although the Order allows the parties to file amended pleadings as a matter of right, without leave of court, up through May 15, 2013, Dkt. No. 67 at 3, that provision excludes amendments that "seek[] to assert additional patents," and does not provide another deadline for such amendments.  *Id.*

[13] http://www.engadget.com/2012/08/16/tivo-premiere-4-quad-tuner-500gb-249/.  (Mehra Decl., Ex. A).

September 6, 2012,[14] and the TiVo Mini first became available in retail outlets in March 2013.[15] Meanwhile, Cisco undertook a thorough pre-filing investigation to determine the sufficiency of a counterclaim for infringement of the Cisco DVR Patents before seeking to amend its counterclaims.  As further noted herein, this case is still in its relatively early stages, and plenty of time remains within the existing schedule to accommodate addition of Cisco's counterclaims for infringement of its own patents.  This is particularly true given that the parties will not be starting from scratch in terms of discovery—Cisco is accusing the same core DVR technology that TiVo has already placed at issue in this case and that has already been the subject of TiVo's document production.

Notably, TiVo has previously insisted in other litigation that its own similarly timed motion to add a patent counterclaim was reasonable and resulted in no prejudice to the plaintiff. Specifically, in a motion for leave to amend filed by TiVo in litigation initiated by Microsoft in the Northern District of California, TiVo insisted that it brought its motion "as soon as practicable" when it sought, almost a year into the litigation, to add its own patent into that pending suit.  *See Microsoft Corp. v. TiVo, Inc.*, CA No. 5:10-cv-240, motion at Dkt. No. 61 (N.D. Cal., Jan. 13, 2011) (asserting that TiVo "acted responsibly and promptly and brought [its] request in a timely manner").  [Mehra Decl., Ex. E]  TiVo further argued:

> Courts routinely grant leave to amend to include additional patents and supplemented claims, even where the case has progressed much further than this one. *See, e.g., SAP Aktiengesellschaft v. I2 Technologies, Inc.*, 250 F.R.D. 472, 473 (N.D. Cal. 2008) (granting leave to amend to add patent after infringement and invalidity contentions had been served, but little discovery had occurred);

---

[14] http://www.engadget.com/2012/08/29/tivo-stream-transcoder/.  (Mehra Decl., Ex. B).

[15] http://www.zatznotfunny.com/2013-03/tivo-mini-review/.  (Mehra Decl., Ex. C).  The TiVo Mini was apparently available through at least one non-retail outlet on February 7, 2013. http://www.engadget.com/2013/02/07/tivo-mini-available-suddenlink-price/.  (Mehra Decl., Ex. D).

> *SanDisk Corp. v. STMicroelectronics, Inc.*, No. C 04-4379 JF (RS), 2009 WL
> 1404689, at *3 (N.D. Cal. May 19, 2009) (granting leave to amend to add
> additional patents despite the fact that discovery was mostly complete where the
> new patents "are very similar to the two patents-in-suit"); *Aten Int'l Co. v. Emine
> Tech. Co.*, 2010 WL 1462110, at *4 (C.D. Cal. Apr. 12, 2010) (granting motion to
> amend and noting that "[a]mended and supplemental patent claims are frequently
> added to existing lawsuits" and collecting cases).

*Id.* at p. 5-6.

TiVo also insisted in that motion that "ample time for discovery and for evaluation of

claim construction issues" remained in the existing schedule in that case, wherein opening claim

construction briefs were due one month after TiVo's motion was filed and the claim construction

hearing was four months away.  *See id.* at p. 4.  Here, opening briefs are not due for over two

months, and the parties are not even due to exchange proposed terms for construction for about

another month.  *See* Amended Docket Control Order, Dkt. No. 67.  The claim construction

hearing is about three and a half months away.  *Id.*  Thus, ample time similarly remains here, and

Cisco's motion is not unreasonably timed.

> ### 2.    Cisco's Counterclaims Serve the Important Interest of Cisco's Enforcement of its Patent Rights and Overlap Substantially With Issues Already in this Case

The next factor to be considered by the Court in addressing "good cause" is "the

importance of the thing that would be excluded"—here, requiring TiVo to answer for its own

infringement of Cisco's patents.  *See S&W Enters.,* 315 F.3d at 536.  The importance of Cisco's

ability to enforce its own patent rights cannot reasonably be questioned.

Cisco's role in pioneering the development of multi-room television technology is

already at issue in this case.  In particular, based on TiVo's arguments in other cases, Cisco

expects TiVo to argue in this case that it invented and patented "multi-room DVR" technology in

its U.S. Patent No. 7,529,465.  Although TiVo labels its asserted '465 patent as "the Multiroom

Patent,"[16] the '465 patent neither describes nor enables an actual multi-room embodiment. Specifically, the '465 patent does not disclose watching <u>two separate feeds</u> on <u>two separate screens</u>; rather, it merely discusses using trick play features (*e.g.*, fast-forward, rewind, frame step, etc.) on multiple video feeds simultaneously on a <u>single screen</u>. [*See, e.g.*, '465 patent at Abstract; 2:34-39; 12:17-24 (Mehra Decl, Ex. J)]

Cisco, on the other hand, has been recognized in the industry as an innovator of multi-room television technology, as described and claimed in Cisco's '592 patent (*see supra*). Allowing Cisco's counterclaims would allow the parties' apparent dispute over multi-room technology to be efficiently resolved in a single case.

In addition, TiVo's infringing technology is already at issue in this case and has already been the subject of TiVo's own document production. For example, TiVo will likely rely at least partly on a lost profits theory for damages, in addition to its reasonable royalty theory. TiVo's lost profits claim will require it to inject substantial evidence about its own DVR products into this case because TiVo would have to prove (among other things) that it would have made additional profits on its DVR products "but for" the alleged infringement. TiVo's required production will include (among other things) TiVo's technical and development documents, its sales and financial information, its marketing documentation and surveys, as well as its license and sales agreements relating to DVRs. This production largely overlaps with the evidence needed by Cisco for its own infringement and damages cases.[17] In addition, there will be a substantial overlap of information needed for the reasonable royalty analysis for the accused

---

[16] *See, e.g.*, TiVo's P.R. 4-5(a) Opening Claim Construction Brief in *TiVo, Inc. v. Verizon Communications Inc.*, CA No. 2:09-cv-257-DF, at 19.

[17] The list of accused TiVo products at issue in Cisco's counterclaims includes the TiVo Premiere 4 DVR, the TiVo Mini, and the TiVo Stream.

DVR features on both TiVo and Cisco's asserted patents.  For example, because DVRs use hundreds (if not thousands) of separately-patented features and functionalities, an apportionment analysis will be required to assess TiVo's reasonable royalty claim.  Cisco's many innovative contributions to the accused DVRs, including its pioneering work related to the asserted Cisco DVR Patents, will be highly relevant to the apportionment analysis.  In addition to the overlap in technical and product documentation, there will be a large overlap of damages-related evidence—including DVR-related license agreements, plans, surveys, marketing studies, financials, etc.—that will be relevant to both TiVo's and Cisco's respective damages claims.

In a nutshell, Cisco's counterclaims would not inject foreign issues into this case, but would instead build upon issues already squarely raised by TiVo's own claims.  Cisco's counterclaims would also allow a single jury to consider and resolve the parties' apparent dispute over who has pioneered and patented the multi-room, multi-tuner, and time-shift buffering technology that is actually used by modern DVRs, as well as the relative importance of the parties' respective contributions in resolving any damages issues.

### 3.    TiVo Would Not Suffer Undue Prejudice in Being Asked To Answer for Its Own Infringement

TiVo cannot articulate any real or undue prejudice that it would suffer as a result of allowing Cisco's Amended Pleading.  During the parties' meet and confer, TiVo complained that Cisco's counterclaims are too late.  TiVo's argument is belied by the fact that discovery is still at an early stage, claim construction has not even yet begun, and trial is almost a year away.

It is true that if Cisco's infringement claims are added the invalidity contentions for Cisco's patents will be on a slightly different schedule than for TiVo's patents.  This is not unusual or prejudicial.  There is no reason to believe that the case schedule will have to be adjusted to accommodate the addition of Cisco's counterclaims.  To the contrary, other than the

identification of new dates for infringement and invalidity contentions on Cisco's patents, the current case schedule provides ample time for the parties to conclude discovery on both the TiVo patents-in-suit and Cisco's patents.  This is particularly true given that the core technology subject to Cisco's counterclaims is already at issue in the case, as noted *supra*, and has been and will continue to be the subject of discovery and litigated regardless.

TiVo's opposition to Cisco's addition of its infringement counterclaims boils down to TiVo's desire to avoid defending against Cisco's own infringement claims in this case.  That is not cognizable prejudice.  *See, e.g., Garmin Ltd., v. TomTom, Inc.*, No. 2:06cv338 (LED), 2007 U.S. Dist. LEXIS 74032, at *21 (E.D. Tex. Oct. 3, 2007).

### 4. Cisco's Counterclaims Can Be Handled With Minor Modifications to the Existing Scheduling Order

The final factor to be considered by this Court with regard to "good cause" is the availability of a continuance to cure prejudice.  As noted *supra*, however, TiVo would not suffer undue or cognizable prejudice in being required to answer for its own infringement in this case.  Moreover, because ample time remains within the existing schedule to accommodate discovery and claim construction for Cisco's patent claims, no continuance is needed.

At most, minor additions to the Court's Docket Control Order would be warranted—for example, to establish deadlines for Cisco's infringement contentions and TiVo's invalidity contentions.  But Cisco submits that the existing deadlines for claim construction, discovery, expert reports, motions and trial may be left in place.  Should TiVo somehow demonstrate otherwise, Cisco is willing to agree to reasonable accommodations as necessary.

### B. Justice Would Be Served by Granting Cisco's Motion for Leave

Cisco's motion also satisfies Federal Rule of Civil Procedure 15(a), which provides that leave to amend pleadings shall be "freely given" when justice requires.  Fed. R. Civ. P. 15(a);

*Foman*, 371 U.S. at 182; *Whitmire v. Victus Ltd*., 212 F.3d 885, 889 (5th Cir. 2000). None of the factors that would argue against the Court granting Cisco's motion for leave to amend—such as undue delay, undue prejudice, bad faith or futility—are present in this case. Rather, Cisco is seeking, in good faith and without a dilatory motive, amendments to its Answer and Counterclaims, and, as noted herein, TiVo would not be unduly prejudiced by these amendments. Further, there is also no issue of futility. An amendment is "futile" only if it fails to state a claim upon which relief could be granted. *See Stripling v. Jordan Prod. Co*., 234 F.3d 863, 872-873 (5th Cir. 2000). TiVo has no basis to suggest that the additional claims set forth in Cisco's Amended Pleading would be futile.

## IV.     REQUEST FOR EXPEDITED BRIEFING

To allow Cisco's motion to be resolved as quickly as possible, Cisco also requests that briefing on its motion be expedited. In particular, Cisco asks that TiVo's opposition brief be due within one week (by Tuesday, April 30th), and Cisco agrees to file its reply within 3 days thereafter (by Friday, May 3d).

## V.      CONCLUSION: RELIEF REQUESTED

Because Cisco's DVR Patents pertain to the same core DVR technology already at issue in this matter, and because this case is in its relatively early stages with plenty of time to address Cisco's counterclaims within the existing deadlines, it will be more efficient to litigate Cisco's patent infringement claims with TiVo's in this case, rather than to force Cisco to initiate an entirely separate action. Cisco therefore respectfully requests that the Court grant Cisco leave to file its First Amended Answer, Affirmative Defenses and Counterclaims. Cisco further respectfully requests that briefing on its motion be expedited.

Dated:  April 23, 2013

Respectfully submitted by,
 */s/  Doug McClellan, with permission by
Michael  E. Jones*
 Michael E. Jones
 SBN: 10929400
 Allen F. Gardner
 SBN: 24043679
 POTTER MINTON, PC
 110 North College
 Suite 500
 Tyler, Texas 75702
 Tel: 903-597-8311
 Fax: 903-593-0846
 mikejones@potterminton.com
 allengardner@potterminton.com

 Otis W. Carroll
 SBN: 03895700
 Ireland, Carroll & Kelley, PC
 6101 South Broadway, Suite 500
 Tyler, Texas 75703
 Tel:  903-561-1600
 Fax: 903-581-1071
 nancy@icklaw.com

 Jared Bobrow
 jared.bobrow@weil.com
 Arjun Mehra
 arjun.mehra@weil.com
 WEIL, GOTSHAL & MANGES LLP
 201 Redwood Shores Parkway
 Redwood Shores, CA 94065
 Tel: 650-802-3000
 Fax: 650-802-3100

 Doug McClellan
 doug.mclellan@weil.com
 Melissa Hotze
 melissa.hotze@weil.com
 WEIL, GOTSHAL & MANGES LLP
 700 Louisiana, Suite 1600
 Houston, TX 77002
 Tel: 713-546-5000
 Fax: 713-224-9511

 *Attorneys for Defendant Cisco Systems, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on April 23, 2013.

*/s/ Michael E. Jones*

## CERTIFICATE OF CONFERENCE

I certify that counsel has complied with the meet-and-confer requirement in Local Rule CV-7(h, and TiVo opposes the present motion.  Counsel for Cisco, Doug McClellan, met-and-conferred with counsel for TiVo, MacClain Wells, on April 23, 2013, via teleconference, in a good faith attempt to resolve this matter.  The discussions ended in an impasse, leaving an open issue for the Court to resolve.

*/s/ Michael E. Jones*
Michael E. Jones

17